# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DARLENE DETERS,

          *Plaintiff,*

        v.                          Case No. C-1-04-811

ROCK-TENN COMPANY, INC., et al.,

          *Defendants.*

## **ORDER**

### I. Introduction

This matter is before the Court upon the motion for summary judgment filed by

defendants Rock Tenn Company (Rock Tenn) and Rock Tenn Converting Company (Rock Tenn

Converting) on all claims brought by plaintiff Darlene Deters (doc. 20).  Plaintiff  opposes the

motion (doc. 44).  Defendants have filed a reply in support of their motion (doc. 70).  Both sides

have filed proposed findings of fact and conclusions of law, which the opposing side has

highlighted as true, false, or irrelevant (docs. 42, 64).

Plaintiff, a citizen and resident of the State of Ohio, filed the complaint in this action on

November 30, 2004, and an amended complaint on January 27, 2005 (docs. 1, 4).  She alleges

that both defendants are Georgia corporations and that each has its principal place of business in

Georgia and a place of business in Ohio.  Plaintiff asserts that the Court has diversity jurisdiction

over the case and original jurisdiction over the federal claims and that it may exercise

supplemental jurisdiction over the state law claims.  Plaintiff brings claims for sex

1

discrimination, sexual harassment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, and Ohio Rev. Code § 4112.  Plaintiff also brings claims for breach of Ohio public policy, "tort of sexual harassment," and negligent retention in violation of Ohio law. Defendants move for summary judgment on all claims.

## II. Summary judgment standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action.  This Court may only grant summary judgment as a matter of law when the moving party has identified, as its basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986).

The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 88 S.Ct. 1575 (1968)).  The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor.  *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158, 90 S.Ct. 1598, 1608-09 (1970)).

The court is not to weigh the evidence and determine the truth of the matter but is to decide whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511. There is no genuine issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  *Id.* (citing *Cities Serv.*,  391 U.S. at 288-289, 88 S.Ct. at 1592).   The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as matter of law."  *Id.* at 251-52, 106 S.Ct. at 2511.  If the evidence is merely colorable

2

(*Id*. (citing *Dombrowski v. Eastland*, 387 U.S. 82, 84, 87 S.Ct. 1425 (1967)), or is not

significantly probative (*Id*. (citing *Cities Serv.*, 391 U.S. at 290, 88 S.Ct. at 1592), judgment may

be granted.

### III. Facts

The following facts are undisputed unless otherwise noted.  Rock Tenn is a subsidiary of

Rock Tenn Company. Plaintiff began her employment with Rock Tenn in 1999 as a scale

operator at its Seward Road Recycling Plant in Fairfield, Ohio. Her duties including weighing

trucks that were empty and full to determine the weight of their loads, issuing the appropriate

paperwork for billing, answering the phones, making schedules for drivers picking up recycled

paper, and performing other administrative duties.  The Seward Road facility had fewer than two

dozen employees.  Bill Smith was defendants' Divisional Director for Employees in

Organizational Effectiveness.  Chuck Wuchter was installed as Plant General Manger and

plaintiff's direct supervisor in November 1999.  Mr. Wuchter reported to Steven Flanagan, Vice-

President of the Recycle Division.  Ernie Young was the Cincinnati Plant's Superintendent and

Robert Webber, with whom plaintiff had a consensual romantic relationship, was the Office

Manager.

Plaintiff alleges that on an unknown date, a truck driver reported to her that another truck

driver who was waiting for her to process paperwork for him had just fondled himself.  Plaintiff

had not seen the alleged incident because the driver was standing behind a ledge.  According to

plaintiff, when she described the incident to Mr. Flanagan when speaking to him later that

afternoon, he replied that Mr. Wuchter seemed to attract people like that.  Plaintiff does not

recall ever seeing the truck driver again at the plant following that incident.

According to plaintiff, Mr. Wuchter made unwelcome sexual advances, requests for

sexual favors, sexually explicit comments, and obscene gestures to her on a regular basis over a three-year period beginning immediately after he became plaintiff's supervisor.  Plaintiff claims that in October 2002, in response to an invitation by Rock-Tenn CEO James Rubright to employees to report illegal conduct, she reported to Mr. Webber that she had been sexually harassed by Mr. Wuchter.  By November 4, 2002, Mr. Webber had passed plaintiff's report on to Bob Portnell, Manager of Internal Audit and Mr. Flanagan's supervisor, who then told Mr. Smith that he should investigate plaintiff's complaints.  Mr. Smith arranged a meeting which took place in early December, at which plaintiff reported the harassment she had endured for three years.  As part of his investigation, Mr. Smith also conducted interviews with Mr. Webber and certain other employees at an off-site location.  Following his investigation in early December, Mr. Smith reported his findings to Mr. Flanagan and discussed with him what needed to be done next.  Mr. Smith provided Mr. Flanagan with his notes of the investigation, reporting that the facility was a "powder keg waiting to explode . . . and the sexually explicit comments made by plant management clearly constitutes [sic] huge legal exposure."  Based on this conclusion, at a meeting in mid-December 2002, Mr. Smith recommended that Mr. Flanagan quickly terminate Mr. Wuchter and Mr. Young to defuse the volatile situation.  Mr. Wuchter was not separated from plaintiff while Mr. Flanagan decided what to do, and Mr. Smith thought there were no indications that plaintiff felt the need to be separated from him.  Mr. Flanagan thereafter agreed that the appropriate course of action would be to terminate Mr. Young and Mr. Wuchter.  Mr. Flanagan informed plaintiff of the company's intent to do so approximately two weeks after the decision was made.

Mr. Wuchter and Mr. Young were terminated on January 15, 2003.  Although Mr. Flanagan purportedly intended to terminate Mr. Wuchter off-site, he allowed him to return to the

plant to say good-bye.  Before arriving at the plant, Mr. Flanagan called plaintiff at the plant to let her know that they would be returning for this purpose and to advise her that she could leave the facility if she so desired.  Plaintiff claims that she did not leave the plant but instead locked herself in Mr. Webber's office.  Plaintiff alleges that Mr. Wuchter called for her to come out when he arrived back at the plant, but she ignored his calls.

In February 2003, following Mr. Wuchter's termination, Mr. Flanagan promoted Sue Beene to the position of General Manager.  She became plaintiff's new supervisor.  According to plaintiff, Ms. Beene was aware of all the particulars of the investigation of plaintiff's complaint. Plaintiff alleges that the following month, Ms. Beene began verbally abusing her in retaliation for making her complaint.

Mr. Flanagan terminated Mr. Webber over the telephone in August 2003 for verbally mistreating Ms. Beene.  According to plaintiff, in that same phone call, Mr. Flanagan asked to speak to plaintiff, who shared a home with Mr. Webber, and told her that her job was still there for her.  Plaintiff thought she was having a heart attack and started to go to the emergency room at the hospital but turned back before she arrived there.  The following Monday, she saw her internist, who referred her to a psychiatrist.  The psychiatrist diagnosed plaintiff with anxiety brought on by severe job stress and ordered her into an out-patient psychiatric program. Although she completed the hospitalization, plaintiff alleges she was unable to return to work at the Rock-Tenn facility and was forced to resign in November 2003.

Prior to her termination, on October 1, 2003, plaintiff filed a charge of discrimination with the EEOC (doc. 54, exh. T).  Plaintiff checked the boxes for retaliation and discrimination on the basis of sex.  Plaintiff alleged that she had been sexually harassed by Mr. Wuchter.  She further alleged that subsequent to her complaint about the harassment in December 2002, she had

been verbally harassed by General Manager Sue Beene. Plaintiff stated that the company had removed Mr. Wuchter from his position in January 2003 and that she had been on sick leave since August 22, 2003. Plaintiff stated that she believed she had been discriminated against because of her sex and because of her opposition to employment practices made unlawful by Title VII. In an accompanying statement to the EEOC, plaintiff described the harassment by Mr. Wuchter and the alleged abuse by Ms. Beene (doc. 54, exh. U). Plaintiff stated that she had asked for FMLA leave because she was unable to work in the state she was in and needed to have time for therapy and healing. Plaintiff asserted that she could not face another day of Ms. Beene abusing her.

## IV. Opinion

### A. Sexual harassment claim

Plaintiff claims that her resignation from her employment constituted a constructive discharge. Defendants contend that plaintiff cannot prevail on her sexual harassment claim under a constructive discharge theory. Defendants argue that plaintiff was not being subjected to any harassment when she quit her job as she was on leave under the Family and Medical Leave Act (FMLA) at the time and indeed, by her own admission, she had not been subjected to any sexual harassment after January 15, 2003, when Mr. Wuchter was fired; plaintiff cannot recover under a hostile environment theory because the conduct for which she seeks to recover was not subjectively offensive to her and she has admitted the conduct did not impact her work in any way; and the company has a defense that bars all claims because it had promulgated a sexual harassment policy on which plaintiff was instructed and to which she had access, and she unreasonably failed to bring her concerns to anyone in authority pursuant to the policy because of unfounded concerns that it would be futile to do so. Defendants claim that the policy was

6

sufficient because it had: (1) an unequivocal declaration that sexual harassment is forbidden, and (2) a mechanism for reporting, including a mechanism for bypassing a harassing supervisor when making a complaint.  Defendants contend that the company did not know of any potential hostile environment harassment issue involving plaintiff until November 2002, when Mr. Webber reported that Mr. Wuchter was making sex-tinged comments to plaintiff, and it had never received any complaints about Mr. Wuchter's behavior in the past.  Defendants also allege that plaintiff's constructive discharge claim is outside the scope of her charge filed with the Equal Employment Opportunity Commission (EEOC), in which she specified her claims to be sexual harassment, sex discrimination, and retaliation.

In response, plaintiff argues that the sexual harassment to which she was subjected was unwelcome; it interfered with her job duties; and there is a genuine issue of material fact as to whether it was severe or pervasive, altered the conditions of her employment, and created an abusive working environment.  Plaintiff also asserts that defendants cannot establish an affirmative defense because she has alleged severe harassment that happened on a daily basis and a reasonable jury could conclude that the only reasonable response would have been for defendants to separate plaintiff and Mr. Wuchter immediately upon learning of the harassment instead of allowing eight to ten weeks to pass before terminating him and stopping the harassment.  Plaintiff further points to the fact that Mr. Wuchter was given a severance package and aid in finding new employment as moves that were hardly calculated to deter future harassment.  Plaintiff further alleges that a jury could find that she did not unreasonably fail to take advantage of opportunities provided by the company to stop the harassment since a jury could conclude that she reasonably believed, given her understanding of a close relationship between Mr. Flanagan and Mr. Wuchter and her past experience with reporting sexual

harassment, that any complaints would fall on deaf ears.  Plaintiff also alleges that there is a genuine issue as to whether defendant posted a policy prohibiting sexual harassment upon which defendant relies for its affirmative defense and whether she received a copy of the company's anti-harassment policy.

Discrimination that is "sufficiently 'severe or pervasive' to 'alter the conditions of [the victim's] employment and create an abusive working environment'" is actionable under both Title VII and Ohio law.  *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 67, 106 S.Ct. 2399, 2405 (1986); *Tarver v. Calex Corp.,* 125 Ohio App.3d 468, 708 N.E.2d 1041 (1998).  Federal case law interpreting Title VII is generally applicable to cases involving alleged violations of Ohio Rev. Code Ch. 4112.  *Little Forest Med. Ctr. of Akron v. OCRC,* 61 Ohio St.3d 607, 609-610, 575 N.E.2d 1164, 1167 (1991).  To establish a prima facie hostile environment case based on gender under Title VII and Ohio law, plaintiff must establish that (1) she is a member of a protected class, (2) she was subjected to unwelcome harassment, (3) the harassment was based on her gender, (4) the harassment had the effect of unreasonably interfering with her work performance by creating a hostile, offensive, or intimidating work environment, and (5) there is employer liability. *Hafford v. Seidner,* 183 F.3d 506, 512 (6th Cir. 1999).

To satisfy the fourth prong, plaintiff must show that the conduct to which she was subjected was severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and that she subjectively regarded the conduct as abusive. *Smith v. Leggett Wire Co.,* 220 F.3d 752, 760 (6th Cir. 2000) (citing *Jackson v. Quanex Corp.,* 191 F.3d 647, 658-59 (6th Cir. 1999)). In determining whether a reasonable person would consider an environment hostile or abusive, a court must consider all of the circumstances, including the frequency and severity of the conduct and whether the conduct is threatening or humiliating or a

8

mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *Hafford,* 183 F.3d at 512.

An individual who claims a constructive discharge based on a hostile environment carries an additional burden.  That individual must show "working conditions so intolerable that a reasonable person would have felt compelled to resign."  *Penn. State Police v. Sanders,* 542 U.S. 129, 147, 124 S.Ct. 2342, 2354 (2004).  For a constructive discharge to occur, "the employer must deliberately create intolerable working conditions, as perceived by a reasonable person, with the intention of forcing the employee to quit and the employee must actually quit." *See Moore v. Kuka Welding Systems,* 171 F.3d 1073, 1080 (6th Cir. 1999).  "To determine if there is a constructive discharge, both the employer's intent and the employee's objective feelings must be examined."  *Id.* (citing *Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982)).  "Intent can be shown by demonstrating that quitting was a foreseeable consequence of the employer's actions." *Id.*

Employer liability for co-worker harassment is based directly on the employer's conduct. *Hafford,* 183 F.3d at 512 (citing *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 804 n. 11 (6th Cir. 1994)).  An employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Id.*  Employer liability for supervisor harassment is vicarious. *Id.* (citing *Pierce*, 40 F.3d at 803). As the Supreme Court has explained:

> An employer is subject to vicarious liability . . . for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence . . . The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the

plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise."

*Id.* (quoting ***Faragher v. Boca Raton,*** 524 U.S. 775, 807, 118 S.Ct. 2275, 2292-93 (1998)).  The

Supreme Court in ***Faragher*** explained,

> While proof that an employee failed to fulfill the corresponding obligation of reasonable care to avoid harm is not limited to showing an unreasonable failure to use any complaint procedure provided by the employer, a demonstration of such failure will normally suffice to satisfy the employer's burden under the second element of the defense.

*Id*. at 808, 118 S.Ct. at 2293.

Defendants are entitled to summary judgment on plaintiff's sexual harassment claim

brought under a constructive discharge theory.  First, the Court finds that plaintiff failed to

comply with Title VII's requirement that a plaintiff file a discrimination charge with the EEOC

either 180 or 300 days after an "alleged unlawful employment practice occurred" and that the

statement contain the following:

> [A] written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of. A charge may be amended to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein. Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.

42 U.S.C. Section 2000e-5(e)(1); 29 C.F.R. § 1601.12.  Plaintiff alleges that the written statement she submitted to the EEOC should be liberally construed to encompass a claim for constructive discharge. She specifically relies on her statements to the EEOC that she was emotionally abused by the company, which caused her to use FMLA leave, and that she could not face another day of Ms. Beene abusing her.  These statements are not sufficient, however, to describe a constructive discharge.  They provide no indication that plaintiff was claiming that she had been forced to resign her position due to defendants' actions since plaintiff was still employed by defendant when she wrote the statement.  Plaintiff did not amend her charge or file another charge after she left her employment with the company.  Thus, plaintiff's sexual harassment claim brought under Title VII must be dismissed based on plaintiff's failure to allege a constructive discharge before the EEOC.

Assuming plaintiff has exhausted her administrative remedies with regard to her sexual harassment claim based on a constructive discharge theory, and further assuming reasonable jurors could disagree as to whether the defendant employer is entitled to the ***Faragher*** defense, defendant is nonetheless entitled to summary judgment on plaintiff's sexual harassment claim under both Title VII and Ohio law.  A reasonable jury could not conclude based on the evidence plaintiff has produced that she was constructively discharged from her employment. Mr. Wuchter was terminated on January 15, 2003.  Plaintiff continued to work in her same position

following his termination until she went on FMLA leave eight months later in August 2003.
Plaintiff did not resign her position until several months after she went on FMLA leave.  Plaintiff
does not allege that she was subjected to any harassment of a sexual nature after Mr. Wuchter
was terminated.  Given the lengthy period  of time that elapsed between Mr. Wuchter's
termination and plaintiff's FMLA leave and subsequent resignation, a reasonable jury could not
find that plaintiff's decision to resign was a foreseeable consequence of the harassment to which
she had been subjected while Mr. Wuchter was employed by the company.  The relevant time
frame for plaintiff's constructive discharge claim is the months immediately preceding plaintiff's
termination, and the evidence does not permit a finding that plaintiff was subjected to any
harassment whatsoever based on her gender during that time period.  Accordingly, there is no
evidence to permit a finding that plaintiff was subjected to harassment based on her gender that
had the effect of unreasonably interfering with her work performance by creating a hostile,
offensive or intimidating work environment and that made her working conditions so intolerable
that a reasonable person would have felt compelled to resign.  Defendants are entitled to
summary judgment on plaintiff's sexual harassment claim.

## B.  Retaliation

Defendants allege that plaintiff cannot establish her retaliation claim because she
voluntarily resigned in the face of largely innocuous events over which she takes umbrage; i,e,
her perception that her new supervisor was snippy, standoffish, and cool.  Plaintiff argues that
she has presented sufficient evidence of retaliation.

Title VII's anti-retaliation provision, 42 U.S.C. § 2000e-3(a), provides,

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

Ohio Rev. Code § 4112.02 makes it illegal

(I) For any person to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section or because that person has made a charge, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing under §§ 4112.01 to 4112.07 of the Revised Code.

Federal case law interpreting Title VII generally applies to cases involving alleged violations of O.R.C. § 4112.02.  *Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm.,* 66 Ohio St.2d 192, 196, 421 N.E.2d 128, 131 (1981).

To establish a prima facie case of retaliation, plaintiff must demonstrate that (1) she engaged in activity protected under the statute; (2) the exercise of her civil rights was known by defendant; (3) defendant thereafter took a materially adverse action against the plaintiff; and (4) a causal connection exists between the protected activity and the adverse action.  *See Ford v. Gen. Motors Co.,* 305 F.3d 545, 552-53 (6th Cir. 2002); *Thatcher v. Goodwill Industries of Akron,* 117 Ohio App.3d 525, 534-35, 690 N.E.2d 1320, 1326 (1997).  "The burden of establishing a prima facie case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000).

The United States Supreme Court recently elaborated on the type of harms that Title VII's anti-retaliation provision protects against:

> The scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm . . . The anti-retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm. . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.' " [citation omitted]. We speak of *material* adversity because we believe it is important to separate significant from trivial harms. Title VII, we have said, does not set forth 'a general civility code for the American workplace.' . . . An employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience . . . The anti-retaliation provision seeks to prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . It does so by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers . . . And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. See 2 EEOC 1998 Manual § 8, p. 8-13. We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective. An objective standard is judicially administrable. It avoids the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings. . .We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.

***Burlington Northern and Santa Fe Ry. Co. v. White***, __ U.S. __, 126 S.Ct. 2405, 2414-15 (2006). The Supreme Court stated that "this standard does *not* require a reviewing court or jury to consider 'the nature of the discrimination that led to the filing of the charge.'" ***Id.*** at 2416 (citation omitted). "Rather, the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." ***Id.***

The Supreme Court in ***White*** emphasized that whether action would deter a reasonable employee depends upon the facts of the particular case. The Court pointed out that a change in

14

work schedule may make little difference to many workers but may matter a great deal to a young mother with school age children. ***Id.*** at 2415.  The Court gave as another example a supervisor's refusal to invite an employee to lunch, which would ordinarily be a trivial, petty, and non-actionable slight, unless the lunch were a weekly training lunch that contributed significantly to the employee's professional advancement.  ***Id.*** at 2415-16 (citing 2 EEOC 1998 Manual § 8, p. 8-14).

To establish a causal connection, plaintiff must produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not engaged in protected activity. ***Nguyen***, 229 F.3d at 563.  Evidence that the defendant treated the plaintiff differently from similarly-situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation. ***Id***. (citing ***Moon v. Transport Drivers, Inc***., 836 F.2d 226, 230 (6th Cir. 1987)).  The Sixth Circuit has indicated that there are certain cases where temporal proximity alone may give rise to an inference of retaliation.  See, e.g., ***Nguyen***, 229 F.3d at 567 ("while there may be circumstances where evidence of temporal proximity alone would be sufficient to support [an inference of a causal link], we do not hesitate to say that they have not been presented in this case"); ***Ford***, 305 F.3d at 554-55 (quoting ***Moon***, 836 F.2d at 229) ("Although 'temporal proximity alone will not support an inference in the face of compelling evidence' to the contrary, 'the proximity in time between protected activity and adverse employment action may give rise to an inference of a causal connection'"); ***DiCarlo v. Potter***, 358 F.3d 408, 421 (6th Cir. 2004) ("this Circuit has embraced the premise that in certain distinct cases where the temporal proximity between the protected activity and the adverse employment action is acutely near in time, that close proximity is deemed indirect evidence such as to permit an inference of retaliation to arise.")  The Court

15

suggested in a recent decision, however, that temporal proximity is never sufficient, standing alone, to permit an inference of a causal connection.  ***See Randolph v. Ohio Dep't of Youth Services***, 453 F.3d 724, 737 (6th Cir. 2006) ("Although temporal proximity itself is insufficient to find a causal connection, a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection.")

Once plaintiff establishes a prima facie case of retaliation, the burden is on defendant to establish a legitimate reason for the adverse action, which plaintiff may rebut by producing credible evidence of pretext. ***Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.,*** 783 F.2d 50, 54 (6th Cir. 1986).  The Sixth Circuit has cautioned that "The soundness of an employer's business judgment . . . may not be questioned as a means of showing pretext." ***Brocklehurst v. PPG Industries, Inc.,*** 123 F.3d 890, 898 (6th Cir. 1997).  Although the Court should refrain from probing an employer's business judgment, business judgment is not an absolute defense to unlawful discrimination. ***Wexler v. White's Furniture, Inc***., 317 F.3d 564, 576 (6th Cir. 2003) (citing ***E.E.O.C. v. Yenkin-Majestic Paint Corp.,*** 112 F.3d 831, 835 (6th Cir.1997)). The Court in ***Wexler*** addressed the extent to which a fact-finder may consider the reasonableness of an

employer's decision:

> [T]he reasonableness of an employer's decision may be considered to the extent
> that such an inquiry sheds light on whether the employer's proffered reason for
> the employment action was its actual motivation. ***Smith v. Chrysler Corp.****,* 155
> F.3d 799, 807 (6th Cir.1998)) (holding that, in evaluating a proffered
> nondiscriminatory basis for an employment action, courts should inquire into
> 'whether the employer made a *reasonably informed and considered decision*
> before taking an adverse employment action') (emphasis added); ***In re Lewis****,* 845
> F.2d 624, 633 (6th Cir. 1988) ('Sears does not have to establish that the basis on
> which it acted in firing Lewis was *sound;* rather, Lewis has the burden of
> demonstrating that Sears' stated reasons are pretextual. One way for Lewis to do
> this is to show that Sears' asserted business judgment was so ridden with error
> that defendant could not honestly have relied upon it.') (emphasis in original)
> (internal quotation marks omitted).

***Id.***

Plaintiff alleges that defendants retaliated against her after she complained of sexual

harassment in December 2002 by engaging in a pattern of harassment by her supervisors,

including ignoring her complaints of retaliation, and by constructively discharging her from her

employment. Plaintiff claims that the court must look to the defendant's retaliatory conduct after

receiving the complaint as well as the harassment that occurred prior to the complaint in

determining whether a constructive discharge occurred.  Plaintiff claims that the reasoning of

***Wille v. Hunkar Lab****.*, 132 Ohio App.3d 92, 724 N.E.2d 492 (1998) is directly on point in the

present case.  She claims that she endured three years of constant harassment with no reasonable

recourse presented to her and that even after Mr. Wuchter was terminated, she was subjected to

"humiliation, public castigation, an unjustified change in work hours, a significant number of

additional duties without training to perform them or a corresponding increase in salary."

Plaintiff alleges that she also watched each of the employees who had taken part in the

investigation of her complaint singled out for the same hostile treatment and terminated one by

one.  Plaintiff alleges that a reasonable jury could conclude that her work conditions were so

17

difficult that she felt compelled to resign and that this conclusion is supported by evidence that she complained about Ms. Beene's mistreatment but got no response from either Mr. Flanagan or Mr. Smith.  Plaintiff alleges that a jury must consider all the evidence of Ms. Beene's alleged retaliatory conduct from plaintiff's perspective - i.e. three years of egregious sexual harassment, the botched termination of Mr. Wuchter, and subsequent isolation from her co-workers - and could conclude that a reasonable worker in plaintiff's position could be dissuaded from complaining of discrimination by Ms. Beene's cold and abusive behavior toward those involved in the sexual harassment investigation as compared to her friendly treatment of those not involved.

Plaintiff further alleges that she has raised at least a reasonable inference of a causal connection because the acts were so proximate in time to her protected activity and defendants have offered no alternative explanation.  Plaintiff alleges that Ms. Beene began her retaliatory conduct against plaintiff within a matter of weeks after she arrived at the Fairfield plant and continued to retaliate against plaintiff until the day she left for her FMLA leave.  Plaintiff also alleges that Mr. Flanagan, "to whom Beene owed her promotion and her direct supervisor, expressed extreme displeasure at several of [plaintiff's] complaints, including her complaints about the handling of Wuchter's termination and the retaliation she faced directly after the termination."

Initially, the Court finds the evidence plaintiff has submitted is not sufficient to satisfy the requirement that she suffered an adverse action as retaliation for her complaints of harassment.  The sexual harassment plaintiff endured cannot logically be characterized as retaliatory conduct since it occurred *before* plaintiff made any complaints.  Thus, the harassment

18

cannot be considered in determining whether an adverse action was taken against plaintiff in retaliation for her complaints of discrimination and harassment.[1]  In fact, to consider the conduct in connection with plaintiff's Title VII claim would fly in the face of the Supreme Court's admonition in *White* that the anti-retaliation standard does not require a reviewing court or jury to consider the nature of the discrimination that led to the filing of the charge.  This leaves the following actions that occurred beginning in March 2003, several months after plaintiff had complained about the harassment, as possible adverse actions to support plaintiff's retaliation claim:

- Ms. Beene asked plaintiff to take on significantly more duties upon a co-worker's termination and then yelled and screamed at plaintiff when she asked for a raise.  Plaintiff acknowledges that the duties were imposed on her due to the co-worker's termination.
- Ms. Beene castigated plaintiff for allowing a truck to drive around the building, although this was a practice plaintiff had followed without incident for three years.
- Ms. Beene refused to say good morning when she walked past plaintiff and responded curtly to nearly all of her comments.
- Ms. Beene's performance review set plaintiff up to fail at her job because plaintiff was not provided with the training to reach the untenable goals.  For instance, Ms. Beene required plaintiff to learn customer accounts and build relationships with customers without providing training on the different kinds of paper for sale so she could communicate with customers or understand their needs.
- Ms. Beene ordered plaintiff to change her long-standing practice of working overtime throughout the week so that she could leave early on slow Friday afternoons.
- Ms. Beene mistreated all other employees who assisted in the investigation of Mr. Wuchter and Mr. Young's sexual harassment but was friendly and joked with the other employees who did not participate in the investigation.

---

[1] In any event, the Court has determined that a reasonable jury could not find a constructive discharge based on any sexual harassment because of the lapse of time between the harassment and plaintiff's resignation, so that the harassment cannot be considered to have been a retaliatory constructive discharge.

19

These challenged actions are not sufficient to support a retaliation claim.  A reasonable fact-finder could not determine that the actions described by plaintiff were materially adverse in the sense that they might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."  Plaintiff does not allege that she suffered any adverse consequences as a result of a negative performance review or a failure to receive training.  Nor does she allege that the change in her schedule caused her any serious  inconvenience.  The remainder of the conduct described is precisely the type of conduct that the Supreme Court in *White* characterized as "petty slights, minor annoyances, and simple lack of good manners" that employees often encounter in the workplace.  Plaintiff has described a difficult and unpleasant boss who was unfriendly to some of her subordinates and not others and who sometimes reprimanded or corrected plaintiff in an unprofessional manner.  Plaintiff has not alleged facts that would permit the conclusion that her circumstances were such that the slights or yelling took on a greater significance than they might for a typical employee in her position so that, when viewed objectively, a reasonable employee might be deterred by such conduct from making a charge of discrimination.  Because plaintiff has failed to allege a materially adverse action so as to satisfy the third prong of her prima facie case, her retaliation claim must fail.

Even if plaintiff had come forward with evidence to establish a prima facie case of retaliation, she has not produced sufficient evidence of a causal connection to create a genuine issue of material fact on her retaliation claim.  As evidence of a causal connection, plaintiff relies on the temporal proximity between her complaints of harassment in December 2002 and her alleged mistreatment by Ms. Beene, which purportedly began occurring in March 2003.  Temporal proximity is not sufficient, however, to establish a causal connection under the facts of this case.  Ms. Beene was promoted in February 2003.  She was a newcomer to the facility, she

had no connection with Mr. Wuchter, and she filled a position that became available because of plaintiff's complaints against Mr. Wuchter. Plaintiff does not offer any explanation as to why Ms. Beene started retaliating against her for those same complaints several weeks after arriving at the facility. This case does not present circumstances where the temporal proximity between the complaints and the alleged materially adverse actions is sufficient to permit an inference of a causal connection to arise. Because plaintiff has not presented other evidence sufficient to establish a causal connection between her complaints of sexual harassment and alleged acts of retaliation, defendant is entitled to summary judgment on the retaliation claim.

### C. Negligent retention

To establish a claim of negligent retention, a plaintiff must prove the following elements: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) the employer's negligence in hiring or retaining the employee as the proximate cause of plaintiff's injuries." *Evans v. Ohio State Univ*., 112 Ohio App.3d 724, 739, 680 N.E.2d 161, 171 (1996).

Additionally, the Ohio Supreme Court has set forth the following requirement for a claim of negligent retention: "[A]n underlying requirement in actions for negligent supervision and negligent training is that the employee is individually liable for a tort or guilty of a claimed wrong against a third person, who then seeks recovery against the employer." *Strock v. Pressnell*, 38 Ohio St.3d 207, 217, 527 N.E.2d 1235, 1244 (1988). The Sixth Circuit has interpreted that statement in *Strock* to require that a plaintiff allege and prove that an employee is individually liable to the plaintiff for a tort in order to prevail on a claim of negligent retention against the

employer.  ***Minnich v. Cooper Farms, Inc***., 39 Fed.Appx.289, 295 (6th Cir. 2002) (not published in Fed. Reporter).

Plaintiff has not come forward with sufficient evidence to create a genuine issue of material fact on her negligent retention claim.  Defendants terminated Mr. Wuchter on January 15, 2003. Plaintiff has failed to show that defendants' alleged negligence in hiring or retaining Mr. Wuchter prior to that date was the proximate cause of any injury plaintiff sustained. Defendants are therefore entitled to summary judgment on plaintiff's negligent retention claim.

### D.  Failure to provide a safe work environment (Tort of sexual harassment)

Although plaintiff presented a separate claim captioned "Tort of Sexual Harassment" in her amended complaint, she has not addressed this claim in her opposing memorandum.  To the extent plaintiff wishes to present a separate tort claim based on sexual harassment by Mr. Wuchter, defendants are entitled to summary judgment for the same reasons they are entitled to summary judgment on plaintiff's claims for sexual harassment under Title VII and Ohio statutory law and for her claim of negligent retention.

### E.  Violation of Ohio public policy

In ***Greeley v. Miami Valley Maintenance Contrs., Inc.***, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), the Ohio Supreme Court recognized the tort of wrongful discharge in violation of public policy.  The tort requires four elements: (1) a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation

22

element); and (4) the employer lacked overriding legitimate business justification for the

dismissal (the overriding justification element). ***Collins v. Rizkana***, 73 Ohio St.3d 65, 69-70, 652

N.E.2d 653, 657-58 (1995)(citing H. Perritt, The Future of Wrongful Dismissal Claims: Where

Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-99).

For the reasons set forth above in connection with plaintiff's other claims, plaintiff has not

come forward with sufficient facts to show that defendants' actions violated Ohio public policy

and that the elements of a wrongful discharge tort claim are satisfied.  Accordingly, defendants

are entitled to summary judgment on this claim

### F.  Damages/Rock-Tenn as a proper party

In light of the above findings, the Court need not address defendants' argument that Rock

Tenn is not a proper party because it had no involvement in plaintiff's employment as well as

defendants' arguments regarding the unavailability of damages to plaintiff.

## V. Conclusion

In accordance with the foregoing, defendants' motion for summary judgment (doc. 20) is **GRANTED** as to all claims.  This case is **DISMISSED** and is **TERMINATED** on the docket of the Court at plaintiff's cost.

**IT IS SO ORDERED.**

S/ Herman J. Weber

HERMAN J. WEBER, SENIOR JUDGE
UNITED STATES DISTRICT COURT